## Markendorf v. Friedman.

June 9, 1939.
As Extended on Rehearing Nov. 3, 1939.

486

Lukins & Jones, Hubert Meredith, Attorney General, and William Hayes, Assistant Attorney General, for appellant.

Grover G. Sales and Sam S. Blitz for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

Section 1 of Chapter 55 of the Acts of 1938 provides:

"That no appliance, intended or having special utility for the prevention of venereal diseases, shall be advertised (except in periodicals, the circulation of which is substantially limited to physicians and the drug trade), or kept except for personal consumption, displayed, sold, offered for sale, or otherwise disposed of in the State of Kentucky, without a license therefor issued by the State Board of Pharmacy, as hereinafter provided, authorizing such sale, except that this section shall not apply to physicians and medical practitioners regularly licensed to practice medicine in the State of Kentucky by the board of medical examiners."

Section 4 of the Act provides that wholesale licenses shall be issued only to wholesale druggists and that sales thereunder shall be authorized only to those holding licenses to sell under this Act or to physicians and medical practitioners.

Section 5 provides that retail licenses shall be issued only to retail drug stores operated by or employing one or more registered pharmacists, and that sales thereunder shall be made only from the prescription counters of such drug stores and by a registered pharmacist.

Section 7 of the Act provides that no prophylactic rubber or appliance of the character involved shall be sold or become the subject of a license unless it is capable of enduring inflation with one cubic foot of air, and

is free from holes, imperfect rings or blisters, and at least nine inches in length.

The appellee, Charles Friedman, filed this action against the Kentucky Board of Pharmacy alleging that he operated a drug sundry department in a department store in Louisville and that he had on hand a large supply of prophylactic rubbers and appliances having utility for the prevention of venereal disease; that this merchandise complied in every respect with the provisions of Section 7 of the Act; that he had made application to the Board for a license to sell this merchandise and tendered to the Board the license fee of $10, but that the Board declined to issue a license to him and was threatening to seize this merchandise and institute prosecutions against him for selling same without the license required by law.

He alleged that Sections 4 and 5 of the Act, providing that sales of such merchandise should be made only by wholesale druggists and by retail druggists, operated by or employing a registered pharmacist, are in violation of Sections 3 and 59 of the Constitution of Kentucky and in violation of the due process clause and the equal protection clause and other provisions of the Fourteenth Amendment to the Constitution of the United States, U. S. C. A. He sought a declaration of rights and an injunction enjoining the Board from interfering with him in the sale of this merchandise and in refusing to issue license to him.

On final trial the court overruled a demurrer to the petition and the cause was submitted on the pleadings. Judgment was rendered holding that so much of the Act as limited the sale of such merchandise to wholesale druggists and to retail druggists employing registered pharmacists was unconstitutional and void. An injunction was granted against the Board in accordance with the prayer of the petition, and from this judgment the Board appeals.

When the petition was filed a motion for a temporary injunction was made. The trial court, however, sustained the demurrer to the petition and denied the injunction. A motion was then made before a judge of this court and a temporary injunction was granted. In the order signed by a judge of this court granting the temporary injunction it was indicated that no reasonable basis appeared for the limitation of retail licenses

488

to drugstores employing one or more registered pharmacists, and that there was no reasonable basis for the classification made by the Act.

This motion for a temporary injunction was heard by four judges of the court and all concurred in granting the injunction. Much stress is laid by counsel for appellees on the fact that the temporary injunction was granted, but an examination of the order granting the injunction reveals that the judge signing the order stated therein that it must be distinctly understood that the conclusions expressed were measured by the thought that the relief granted was purely temporary and pendente lite, and it was said therein that perhaps on a final hearing the defendants might present facts justifying the classification.

However, on the return of the case to the circuit court no proof was taken by either side. On the hearing of the motion for a temporary injunction the plaintiff filed the affidavits of two physicians and a registered pharmacist tending to show that there was no reasonable basis for the classification contained in the Act. These affidavits were competent on that hearing, but, of course, cannot be considered on a final trial of the case. The judgment recites that the case was submitted on the pleadings. We, therefore, have the situation where the question must be determined as an original proposition, and where no proof has been taken by either side.

Section 3 of the Constitution provides that no grant of exclusive privileges shall be made to any man or set of men, except in consideration of public services, and Section 59 prohibits special or local legislation. In addition to these provisions the Fourteenth Amendment to the Federal Constitution declares that no state shall deny to any person within its jurisdiction the equal protection of the laws. The purpose of these provisions was to place all persons similarly situated upon a plane of equality and to render it impossible for any class to obtain preferred treatment, or for those in power to grant favors for political support. However, it has been uniformly recognized that the foregoing provisions do not forbid a classification based on reasonable and natural distinctions, and an Act making a classification will only be voided where the classification is manifestly arbitrary and unreasonable so as to exclude one or more of a class without reasonable basis in fact.

We are, therefore, confronted in this case with the single question as to whether classification made by the Act providing that sales of merchandise of this character may be made only by wholesale druggists and by retail druggists employing registered pharmacists, is a classification made on reasonable and natural distinctions, having a reasonable relation to the purposes of the Act.

The title of the Act in question is as follows:

"An Act relating to the sale, control and licensing of the sale of appliances, drugs and medicinal preparations intended or having special utility for the prevention of venereal diseases."

The body of the Act, however, does not refer in any way to drugs and medicinal preparations intended or having special utility for the prevention of venereal diseases. The body of the Act, however, does not refer in any way to drugs and medicinal preparations, but only covers the sales of appliances. The appellee takes the position that this title is misleading and such as to render the Act void, because the body of the Act does not refer to any medicinal preparations.

We are of the opinion that there is no merit in this contention, however, because a failure to make the body of the Act as broad as the title has never been held to render the Act void. We see in this nothing calculated to be misleading, or such as to render it apparent that the title was designed to be deceptive.

The Legislature has undertaken in this Act to make a classification of druggists, having registered pharmacists, as peculiarly qualified to determine whether or not merchandise of the character here involved complies with the standards provided by Section 7 of the Act. It cannot be seriously questioned that it had a right to legislate along these lines, as such legislation is unquestionably within the police power of the state, in that it has the public health as its object. The question is whether the persons (sellers) embraced by the Act form by themselves a proper and legitimate class with reference to the purpose of the Act. If any possible reasonable basis can be conceived to justify the classification, then it should be upheld. The Legislature must be deemed to have found as a fact or to have assumed as a fact

that registered pharmacists are as a class peculiarly fitted to pass on this question.

Of course, any person is as qualified as a registered pharmacist to determine whether or not an appliance of this character is nine inches long. But can the same be said with regard to the specification that such appliances must be capable of enduring inflation with one cubic foot of air and free from holes, imperfect rings or blisters? It is conceivable to us that a registered pharmacist has a peculiar fitness to judge of these standards. We know, as a matter of common knowledge, that the ordinary man or merchant is not capable of measuring a cubic foot of air. We may assume, and no doubt the Legislature was justified in assuming, that a pharmacist has received some special training along the lines of physics and chemistry, and is in a better situation to make this test than the ordinary man. The Legislature was possibly justified also in assuming that the pharmacist, by reason of his training, is more capable than the ordinary man of determining whether a rubber or membrane contains imperfections of the kind mentioned in Section 7. Reasonable minds might differ as to whether or not pharmacists possess these qualifications to a degree greater than the ordinary man. But we cannot concern ourselves with this if there was any reasonable basis for the Legislature to find as a fact that it is true, or to assume it as a fact. It must be remembered that all doubts as to the constitutionality of a statute should be resolved in its favor. Shaw v. Fox, 246 Ky. 342, 55 S. W. (2d) 11.

It is insisted by appellee that this character of merchandise is sold in the original package and without examination and that only the manufacturer can tell whether it meets the proper tests. Counsel lay great stress on the case of Kentucky Board of Pharmacy v. Cassidy, 115 Ky. 690, 74 S. W. 730, 25 Ky. Law Rep. 102, in which it was held that an Act of the character here involved, which provided that patent and proprietary medicines might be sold only by registered pharmacists, was void. At first blush that case would seem to be controlling, but an examination of the Act in controversy in that case reveals that it provides no standards to which patent or proprietary medicine must measure up, and the opinion points out that the statute requires no duty of the registered pharmacist in reference to these medicines. Such is not the case in the statute here

involved, because standards as to the merchandise are provided by the statute, and the pharmacist is required to see that the merchandise measures up to those standards.

It is well known that patent and proprietary medicines are sold only in the original packages. Appellees contend that the same situation exists as to the character of merchandise we are considering, but such merchandise is sold not only in packages, or boxes, as contended by appellee, but also in single units. When merchandise of this character is received by a druggist, the pharmacist, although he does not examine each individual article, may nevertheless make an examination of a unit of each particular lot to ascertain if the lot measures up to the standards provided by the statute.

With these considerations in mind we are not prepared to say there was no reasonable basis for the classification made by the Legislature or that the classification is purely arbitrary and based upon a distinction having no reasonable relation to the purposes of the law. Since there was a proper classification, the Act violates no provision of the State Constitution and is not violative of the Fourteenth Amendment to the Constitution of the United States.

The foregoing conclusions are applicable only to retail licenses under Section 5 of the Act. No reasonable basis appears for the arbitrary limitation of wholesale licenses to wholesale druggists contained in Section 4. It is not required that sales made by wholesale druggists should be made or supervised by a registered pharmacist. We will indulge no presumption that wholesale druggists are better qualified than other wholesalers to determine whether or not merchandise of the kind here involved complied with the standards provided in the Act. Further, wholesalers, by Section 4, may sell only to retailers holding licenses to sell under this Act. The classification is purely arbitrary and based upon a distinction having no reasonable relation to the purposes of the Act.

We are of the opinion that so much of Section 4 of the Act as attempted to limit wholesale licenses to wholesale druggists is void.

Judgment reversed with directions to enter a judgment in conformity with this opinion.